IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELSIE LOUISE WINTERS,        )
                                 )
          Plaintiff,     )
                               )  Civil Action No.  04-1931
          v.            )  Judge Terrence F. McVerry
                               )  Magistrate Judge Sensenich
BROOKVILLE HOSPITAL,      )
                               )  Re: Doc. # 21
                               )
          Defendant.     )
                               )
                               )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

       It is recommended that Defendant's Motion for Summary Judgment be granted.

**II.   REPORT**

       This is a discrimination action arising out of Plaintiff Elsie Louise Winters's ("Plaintiff") employment with Defendant Brookville Hospital ("Defendant").  Plaintiff commenced this action on December 23, 2004 alleging that Defendant discriminated against her based on her age and disability in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA")[1], and the Americans With Disabilities Act

---

[1]  Plaintiff's complaint actually states "this action arises under Title VII of the Civil Rights Act of 1964, 29 U.S.C. § 623, *et seq.*" (See Compl., Doc. # 1 at ¶ 2.) However, Title VII is found at 42 U.S.C. § 2000e, and the statute cited by Plaintiff is the ADEA, located at 29 U.S.C. § 623. The complaint is devoid of any allegation that supports a Title VII claim, and thus this

of 1990, 42 U.S. C. § 12101 *et seq*. ("ADA").

   A.   **Material Facts**

        Plaintiff was born in 1944.  (Joint Statement of
Undisputed Material Facts, Doc. # 23 at ¶ 3.) She was a Licensed
Practical Nurse (LPN) and her job duties included cleaning and
sterilizing instruments, helping to position patients, putting
the gown on the doctor, and assisting the doctor with scoping.
(*Id.* at 10-11, 13.) She worked in Defendant's endoscopy suite
from 1983 to September 24, 2002 when she was terminated by
Defendant's then CEO and President, William Polito. (*Id.* at ¶¶ 4,
13, 24, 73.)

        Plaintiff alleges that she suffers from Artibutal
Fibulations Atra Valve Prolapse (hereinafter "AFAVP"), which
prohibits her from working for extended periods in hot or cold
environments and limits how strenuous her work can be.  (*Id.* at ¶
20.) The parties have stipulated that Plaintiff testified that
she was able to perform all essential job functions and did not
request or need accommodation. (*Id.* at 21.) Her only alleged
accommodation was that she was permitted to park in the upper
lot, which was closer to the hospital. (*Id.* at ¶ 24.) She also
claims that she often did not receive lunch or restroom breaks.
(*Id.* at 9) Her only co-worker, Tammy Clark who was under 40 years

_____

Court will treat the citation to Title VII as a typographical
error, and will evaluate the claim under the ADEA.

                               2

of age and not disabled, also would often not receive lunch or restroom breaks. (*Id.* at 8-9.) After Plaintiff was terminated, her position was filled by Deborah Love Anthony who was born in 1954. (*Id.* at ¶¶ 3, 16.) Ms. Love Anthony had worked for Defendant since 1990.  (*Id.* at ¶ 17.)

In 2001, Plaintiff was disciplined for her failure to properly call off from work. (*Id.* at ¶ 18.) On September 5, 2002, she was involved in a chemical spill incident that occurred at Defendant Brookville Hospital. (*Id.* at ¶ 32.) She testified that she noticed an odor emanating from the Steris machine. (*Id.* at ¶ 33.) She removed the machine from the room where a procedure was being preformed, to another room, and then outside. (*Id.* at ¶ 34.) She noticed liquid on the floor in the procedure room and also the room where the machine had been initially relocated. (*Id.* at ¶ 36.) She mopped up the liquid and called housekeeping. (*Id.* at ¶ 37.) She also requested housekeeping to bring fans because of the odor in the air. (*Id.* at ¶ 38.) Plaintiff also testified that the machine used acid as a sterilant, and that other people could have thought the liquid on the floor was hazardous. (*Id.* at ¶¶ 35, 39.) Defendant has a hazardous spill policy, which lists as the first step "Secure the area and . . . activate alarm . . . page 'Code D - Spill Alert' (location)." (*Id.* at ¶ 92.) Plaintiff did not call a Code D Spill Alert at any time. (*Id.* at ¶¶ 42-45.)

The chemical spill resulted in the medical treatment of eighteen individuals, and the closure of the emergency room for several hours.  (*Id*. at ¶¶ 46-47.) The event resulted in an investigation, and Plaintiff was questioned in connection with the investigation. (*Id*. at ¶ 49.) It was concluded that Plaintiff was not forthright with her account of the incident, she delayed calling a spill alert, she failed to follow procedure, and she unnecessarily exposed patients, employees and visitors to the spill as well as exacerbated the situation. (*Id*. at ¶¶ 53-54.) Plaintiff was suspended as a result of her conduct surrounding the spill, and her failure to return to work as scheduled after the suspension was lifted. (*Id.* at ¶¶ 55, 64.) Her husband called her off from work for two additional days, although Defendant's call off policy states that an employee is expected to personally notify her department head or supervisor by telephone to request sick leave for each day of her absence. (*Id.* at ¶¶ 65, 70-71, 91.) Plaintiff was terminated, effective September 24, 2002 as a result of her conduct surrounding the chemical spill and her failure to comply with proper call off procedures. (*Id*. at ¶ 72.)

Plaintiff testified that Defendant's CEO and President, William Polito, the person who decided her discipline and termination, did not like her because they lived in the same neighborhood and the neighbors spoke highly of her, that she had witnessed his wife intoxicated, and that he gave preference to

other employees because they would go drinking with him. (*Id.* at ¶¶ 29-31.) She also testified that she had a doctor's excuse for the days that she was absent, but admitted that she did not inform Defendant of her need to be off work sick, or of her doctor's excuse before she was informed that she was terminated. (*Id.* at 79-80.)

### B.    Standard for Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."   FED.R.CIV.P. 56(c).   Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

587 (1986).  An issue is genuine only if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986).

   **C.   Discussion**

   Plaintiff asserts that Defendant discriminated against her
based on her disability and her age.  Defendant argues that
Plaintiff can not establish a *prima facie* case of discrimination
under the ADA or the ADEA, and can not establish pretext.

   To defeat a motion for summary judgment, the plaintiff must
establish a *prima facie* case of discrimination under the
appropriate statute, here the ADA or the ADEA. Once the plaintiff
establishes a *prima facie* case, the burden shifts to the employer
to produce evidence of a legitimate, nondiscriminatory reason for
the adverse action. *McDonnell Douglas Corp. v. Green*, 411 U.S.
792, 802 (1973). If the employer meets this burden, the
presumption is dispelled. *Reeves v. Sanderson Plumbing Prods.,
Inc.*, 530 U.S. 133, 142-43 (2000). Plaintiff then must be
afforded the opportunity to prove by a preponderance of the
evidence that Defendant's explanation was pretextual. *Reeves,* 530
U.S. at 143. Further,

      [T]o defeat a summary judgment motion based on a
      defendant's proffer of a nondiscriminatory reason, a
      plaintiff who has made a prima facie showing of
      discrimination need only point to evidence establishing
      a reasonable inference that the employer's proffered

> explanation is unworthy of credence . . . .  A
> plaintiff is not required to produce evidence which
> necessarily leads to the conclusion "that the employer
> did not act for the nondiscriminatory reasons."

*Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995),

*cert. denied*, 515 U.S. 1159 (1995) (citations omitted). The

plaintiff must provide sufficient evidence for a reasonable

factfinder either to reject the employer's nondiscriminatory

explanation for its decision, or to believe that an invidious

discriminatory reason was more likely than not a motivating cause

of the employee's discharge.  *Reeves,* 530 U.S. at 143, *citing*

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254

(1981). Although the burden of production shifts between parties

under the *McDonald Douglas* framework, the ultimate burden of

persuasion remains with the plaintiff. *Reeves,* 530 U.S. at 143.

### 1.   *Prima Facie* Case of Disability Discrimination

The ADA prohibits an employer from "discriminat[ing]

against a qualified individual with a disability because of the

disability."  42 U.S.C.A. § 12112(a)(West 1995).  A qualified

individual with a disability is "an individual with a disability

who, with or without reasonable accommodation, can perform the

essential functions of the employment position . . . ."  42

U.S.C.A. § 12111(8)(West 1995).  A disability under the ADA is

defined as, "a physical or mental impairment that substantially

limits one or more of the major life activities of such

individual."  42 U.S.C.A. § 12112(A)(West 1995).  The ADA also

defines disabled as "a record of such impairment" or "being regarded as having such an impairment."  42 U.S.C.A. §§ 12102(2)(B) and (C)(West 1995). To state a *prima facie* case of discrimination under the ADA, Plaintiff must show: (1) that she is disabled under the ADA; (2) that she is qualified to perform the essential functions of her job either with or without reasonable accommodations; and (3) that she suffered an adverse employment action because of her disability.  *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999). The burden of establishing a *prima facie* case is not intended to be an onerous one, nor it is meant to be rigidly applied because the employer may rebut it simply by producing some evidence that it had a legitimate, nondiscriminatory reason for the decision. *Texas Dep't of Community Affairs,* 450 U.S. at 253-54; *Sempier,* 45 F.3d at 728.

To satisfy the first element of her *prima facie* case, Plaintiff must show that she is disabled within the meaning of the ADA by demonstrating that she has "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C.A. § 12112(A)(West 1995).  The Supreme Court has devised a three prong test for determining whether an individual is disabled.

> First, we consider whether [Plaintiff's condition] was a physical [or mental] impairment.  Second, we identify the life activity upon which [Plaintiff] relies... and determine whether it constitutes a

> major life activity under the ADA.  Third, tying
> the two statutory phrases together, we ask whether
> the impairment substantially limited the major
> life activity.

*Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)(clarifying type of

activities constituting major life activities under the ADA, and

holding that an HIV infected individual is substantially limited

in major life activity of reproduction).  A physical impairment

under the ADA is, "any physiological disorder or condition,

cosmetic disfigurement, or anatomical loss affecting one or more

of the following body systems: neurological; musculoskeletal;

special sense organs; respiratory, including speech organs;

cardiovascular; reproductive, digestive, genito-urinary; hemic

and lymphatic; skin; and endocrine."  *Toyota Motor Mfg., Ky, Inc.*

*v. Williams*, 534 U.S. 184, 194-95 (2002), *citing* 45 C.F.R. §

84.3(j)(2)(I)(2001).[2]

Defendant argues that Plaintiff has failed to establish the

first element of a *prima facie* case: that she is disabled under

---

[2] The ADA has two potential sources of guidance when its
terms are interpreted- the regulations interpreting the
Rehabilitation Act of 1973 and the EEOC regulations that
interpret the ADA.  *Toyota Motor Mfg.,* 534 U.S. at 194 (noting
that the persuasive authority of the EEOC regulations is unclear,
but that the Rehabilitation Act provided a clear floor to the
protections afforded under the ADA.) However, neither party
raised objection to the EEOC standards, or briefed this issue.
Further, the Plaintiff utilized these standards in her Brief in
Response to the Motion for Summary Judgment. (See Doc. # 26 at 4-
5.) Thus, this Court finds both the Rehabilitation Act and EEOC
regulations to be reasonable and persuasive authority in this
case.

the ADA. (Defendant's Br. in Supp. Motion for Summary Judgment, Doc. # 22 at 10.) Plaintiff's entire response to this argument is that:

> Contrary to Defendant's position, the Plaintiff asserts that she is disabled as she suffers from Arrtibual Fibulations Atra Valve Prolapse, which effects her neurological, musculoskeletal, and cardiovascular systems. 29 C.F.R. § 1630.2(h). *Gaul v. Lucent Technologies, Inc.*, (Stmt. ¶ 20). The Plaintiff's condition prohibits her from working in hot or cold environments and sufficiently restricts the condition, manner, or duration under which she performs a major life activity as compared to average persons in the general population. 29 C.F.R. § 1630.2(j)(1). (Stmt. ¶ 20). The Plaintiff's condition is of sufficient duration and permanent. 29 C.F.R. § 1630.2(j)(2). Having established Plaintiff is a disabled person under the act, . . .

(Plaintiff's Response to Motion for Summary Judgment, Doc. # 26 at 5.) This argument is insufficient. First, Plaintiff cites "(Stmt. ¶ 20)" as her only evidentiary support for her establishment of a disability. Paragraph 20 of the statement states: "Plaintiff alleges she suffers from Arrtibual Fibulations Atra valve prolapse which prohibits her from working in hot or cold environments for long periods of time and limits how strenuous her work can be. (Complaint ¶ 39)." (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶ 20, see also Compl., Doc. # 1 at ¶ 39.) Plaintiff refers to her complaint as evidence that she is disabled under the ADA. She does not identify any actual evidence in the record. Second, Plaintiff makes no effort to identify evidence in the record which

establishes each necessary element of the disability she claims, but merely restates the law in positive terms. These bare assertions are insufficient at the summary judgment stage.

Plaintiff avers in her complaint that she has Artribual Fibulations Atra Valve Prolapse ("AFAVP). (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶ 21, see also Compl., Doc. # 1). Defendant does not object to the lack of evidentiary support for this assertion. Therefore, this Court will infer that Plaintiff suffers from this condition. Next, Plaintiff argues in her Response to Defendant's Motion for Summary Judgment, that AFAVP is a disease that "effects her neurological, musculoskeletal, and cardiovascular systems." (Doc. # 26 at 5.) AFAVP would qualify as a physical impairment under the ADA, based upon this description. See *Toyota Motor Mfg.,* 534 U.S. at 194-95, and 45 C.F.R. § 84.3(j)(2)(I)(2001). Defendant, again, fails to object to the lack of evidentiary support for this description of AFAVP (or the fact that the disease description appears only in Plaintiff's brief). Therefore, this Court will infer that Plaintiff's AFAVP is a physical impairment under the ADA.

Having (by default) established that Plaintiff suffers from a physical impairment under the ADA, she must next demonstrate that this impairment substantially limits a major life activity. Plaintiff asserts that her AFAVP causes her to be unable to work in hot or cold environments for long periods and limits how

strenuous work can be. (Joint Statement of Undisputed Material
Facts, Doc. # 23 at ¶ 20, citing the Complaint, at Doc. #1.)
Based upon these assertions, and lack of argument to the
contrary, it would seem that Plaintiff is claiming that the major
life activity is her ability to work. It has been said:

> The ADA itself does not comprehensively define the
> meaning of "major life activity," but it does
> specifically direct that the statute be construed so
> that it meets the standards set forth in the
> Rehabilitation Act of 1973, 29 U.S.C. § 790 *et seq.,*
> and the regulations issued thereunder. 42 U.S.C. §
> 12201(a). Regulations under the Rehabilitation Act
> furnish a representative--but not exhaustive--list of
> functions that should be deemed major life activities.
> These include, "caring for one's self, performing
> manual tasks, walking, seeing, hearing, speaking,
> breathing, learning, and *working*." 45 C.F.R. §
> 84.3(j)(2)(ii); 28 C.F.R. § 41.31(b)(2)(1997).

*Fiscus v. Wal-Mart Stores, Inc.*, 385 F.3d 378, 382-83 (3d Cir.
2004)(emphasis added). Plaintiff has not expressly identified
any major life activity impacted by her AFAVP, and she merely
asserts an inability to *work* in hot or cold environments for long
periods and limits on how strenuous her *work* can be. (Doc. # 23
at ¶ 20, citing the Complaint, at Doc. # 1.) These limitations
are not major life activities in and of themselves under the Act
because she had not demonstrated that these limitations would be
of central importance to most people's daily lives. See *Toyota
Motor Mfg.,* 534 U.S. at 201-02. Therefore, this Court can only
conclude that Plaintiff is asserting that her limitations impact
the major life activity of working.

Thus, the final inquiry to determine whether Plaintiff is disabled under the ADA is whether her AFAVP substantially limits the major life activity of "working". Defendant argues that Plaintiff's condition did not substantially limit her ability to work and thus she cannot establish that she was disabled. (Defendant's Br. in Supp. Motion for Summary Judgment, Doc. # 22 at 6-7.)  Under the ADA, a person is considered disabled only when the impact of a condition substantially limits a major life activity, and when the major life activity of working is claimed, a plaintiff must show that she is substantially limited in a broad class of jobs, not just her specific job. See *Toyota Motor Mfg.,* 534 U.S. at 200-203.

First, Plaintiff must demonstrate that she is substantially limited in the major life activity of working. Substantially limited means an inability or significant restriction "as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Toyota Motor Mfg.,* 534 U.S. at 195-196, *citing* 29 C.F.R. § 1630.2(j)(2001). The issue of "what a plaintiff must demonstrate to establish a substantial limitation" has not been expressly defined, but the Supreme Court has instructed that:

> Our consideration of this issue is guided first and foremost by the words of the disability definition

13

> itself. "Substantially" in the phrase "substantially
> limits" suggests "considerable" or "to a large degree."
> . . .  The word "substantial" thus clearly precludes
> impairments that interfere in only a minor way with the
> performance of manual tasks from qualifying as
> disabilities. . . .
>       "Major" in the phrase "major life activities"
> means important.  . . . "Major life activities" thus
> refers to those activities that are of central
> importance to daily life.

*Toyota Motor Mfg.,* 534 U.S. at 196-97. The Court went on to note

that the ADA confirms that these terms must be construed

strictly, explaining that:

> When it enacted the ADA in 1990, Congress found that
> "some 43,000,000 Americans have one or more physical or
> mental disabilities." . . .  If Congress intended
> everyone with a physical impairment that precluded the
> performance of some isolated, unimportant, or
> particularly difficult manual task to qualify as
> disabled, the number of disabled Americans would surely
> have been much higher.

*Toyota Motor Mfg.,* 534 U.S. at 197, citing *Sutton v. United Air*

*Lines, Inc.*, 527 U.S. 471, 487 (1999) (The *Sutton* Court noted

that because more than 100 million people wear corrective lenses

in order to have proper vision, that "[h]ad Congress intended to

include all persons with corrected physical limitations among

those covered by the Act, it undoubtedly would have cited a much

higher number [than 43 million] disabled persons in the

findings." *Toyota Motor Mfg.,* 534 U.S. at 197-98, quoting *Sutton,*

527 U.S. at 478.) The Supreme Court held that to be substantially

limited in a major life activity, "an individual must have an

impairment that prevents or severely restricts the individual

from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Toyota Motor Mfg.*, 534 U.S. at 198. Finally, the Court instructs that "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." *Id.* The Court concludes that the ADA mandates that an individual seeking protection under the ADA must prove that they are disabled "by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ...  is substantial." *Toyota Motor Mfg.*, 534 U.S. at 198. Thus, in order to satisfy the first element of her *prima facie* case, Plaintiff must demonstrate that her condition considerably limited, severely limited, or prevented her ability to work.  *See Id.* at 197-198; *see also* 29 C.F.R. §§ 1630.2(j)(2)(ii)-(iii)(2001).

With these standards in mind, it is evident that Plaintiff has failed to meet her burden. Her basic assertions fall far below the basic standard that "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Mfg.*, 534 U.S. at 198. The record does not demonstrate that Plaintiff suffers a considerable or severe limitation. Nor does she allege that her AFAVP prevents

15

her from performing any task associated with her work. In fact, the record reveals that Plaintiff was able to perform her job without requesting modifications, and that the only job modification she requested was permission to park in the upper lot of the hospital.  (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶ 22.)  Consequently, she has not established that she had "a physical or mental impairment that substantially limits one or more of [her] major life activities . . . ." 42 U.S.C.A. § 12112(a)(West 1995).[3]

Second, Plaintiff alleges that the major life activity that she was limited in was that of "working". Thus, she would also have to show that she is substantially limited in working a broad range of jobs, not just her specific job. See *Toyota Motor Mfg.*, 534 U.S. at 197-200. Plaintiff does not allege that her AFAVP prevents her from performing her specific job, and she never attempts to demonstrate that she would be substantially limited in performing a broad class of jobs.

Accordingly, Plaintiff has failed to demonstrate that she was disabled under the ADA, and thus has failed to establish a

_____

[3] Plaintiff may still establish that she is disabled under the ADA alternative definitions of disabled, either as having "a record of such an impairment" or "being regarded as having such an impairment."  42 U.S.C.A. §§ 12102(2)(B) and (C)(West 1995). However, there is simply no evidence that she had a record of impairment or was regarded as disabled, nor does Plaintiff argue that she qualifies as disabled under these alternative definitions.

*prima facie* case of discrimination based on a disability. Therefore, it is recommended that Defendant' Motion for Summary Judgment be granted as to Count II.

    **2.**    ***Prima facie* Case Age Discrimination under the ADEA**

    The ADEA prohibits employers from discriminating against individuals in hiring, termination, compensation, or conditions of employment on the basis of their age.  29 U.S.C. § 623(a)(1). The framework established by *McDonald Douglas* is utilized in an ADEA case. *Reeves,* 530 U.S. at 142. To survive a motion for summary judgment in an ADEA case, a plaintiff must establish a *prima facie* case of age discrimination. *Reeves,* 530 U.S. at 142, and *Sempier*, 45 F.3d at 728. A plaintiff establishes a *prima facie* case of age discrimination by showing that: (1) the plaintiff is a member of a protected class, i.e., at least 40 years of age; (2) the plaintiff is qualified for the position; (3) the plaintiff suffered an adverse employment decision; and (4) the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination. *Sempier,* 45 F.3d at 728.

    It is uncontested that Plaintiff has established three of the four elements of her *prima facie* case for age discrimination: she is a member of the protected class (over age 40 when she was terminated); she suffered an adverse employment decision by being terminated; and she was qualified for the position by Defendant's

failure to contest her qualifications. Defendant argues that
Plaintiff has failed to establish the final element, that she was
replaced by a sufficiently younger person to create an inference
of age discrimination. Plaintiff has established that a
significantly younger individual replaced her. The parties do not
dispute that Plaintiff was born in 1944, and her replacement,
Deborah Love Anthony, was born in 1954. (Joint Statement of
Undisputed Material Facts, Doc. # 23 at ¶¶ 3, 16.) Plaintiff's
replacement was roughly ten years younger than Plaintiff. Even
though Ms. Love Anthony is also a member of the protected class
of over forty years of age, Ms. Love Anthony is "sufficiently
younger" than Plaintiff to support an inference of age
discrimination. See *Barber v. CSX Distrib. Servs.*, 68 F.3d 694
(3d Cir. 1995). (Eight-year difference in age supports a finding
that the successful candidate was "sufficiently younger" than
plaintiff to permit inference of age discrimination, even when
the individual who received the preferential treatment was also
within the protected class of over forty years of age.)
Accordingly, Plaintiff has established a *prima facie* case of
discrimination based on age.

After Plaintiff makes a *prima facie* showing of age
discrimination, she creates a presumption of age discrimination
that Defendant must rebut by stating a legitimate
nondiscriminatory reason for her termination. *Sempier,* 45 F.3d

18

at 728. Here, Defendant asserts that Plaintiff was terminated because of her failure to properly handle a chemical spill incident, coupled with her failure to properly call off from work after her suspension stemming from the chemical spill incident. (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶ 72, citing deposition of Polito at 42, 85).  Defendant's decision-maker testified that the seriousness of the incident together with Plaintiff's poor handling of the spill justified her immediate dismissal, although she was only suspended initially in an attempt to rehabilitate her. (*Id.* at ¶¶ 62-63, citing deposition of Polito at 41, 91.) The spill resulted in the medical treatment of eighteen individuals and the closing of the emergency room for several hours. (*Id.* at ¶¶ 46-47.) Then Plaintiff had her husband call her off work in violation of Defendant's policies for two days immediately following her suspension for the chemical spill incident. (*Id.* at ¶¶ 65-71.) She was terminated because of her conduct in connection to the spill, and her failure to return to work. (*Id.* at ¶ 72.) Defendant has proffered a legitimate non-discriminatory reason for Plaintiff's discharge, and has identified evidence in support of its explanation for her discharge.[4]

_____

[4] Documents attached as exhibits to Plaintiff's deposition included an incident report, a letter of termination, hospital policies regarding the call off procedure, the hospital discipline policies, and the hospital's hazardous material spill policy. (Doc. # 24, attachment to ex. B.)

19

Under *McDonald-Douglas*, the burden of producing evidence switches back to Plaintiff who must demonstrate that this reason given by Defendant was a pretext for a discriminatory motive. *Sempier,* 45 F.3d at 728. Plaintiff can meet this burden by presenting direct or circumstantial evidence of discrimination or falsity of the reason offered by Defendant. *Id.* Specifically,

> "[A] plaintiff who has made out a prima facie case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." . . . If the plaintiff produces sufficient evidence of pretext, he need not produce additional evidence of discrimination beyond his prima facie case to proceed to trial. *Id.*
>     Pretext is not demonstrated by showing simply that the employer was mistaken. . . . Instead the record is examined for evidence of inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons.

*Sempier*, 45 F.3d at 731 (internal citations omitted). It has been further explained that to defeat a summary judgment motion:

> The plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."

*Olson v. GE Astrospace*, 101 F.3d 947, 951-952 (3d Cir. 1996). Plaintiff does not contest her involvement in the chemical spill incident, or that her husband called her off from work for the

two days following her suspension. (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶¶ 32-80). Plaintiff has not discredited the proffered reasons for her termination.[5] Therefore, as noted above, she must adduce "evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Sempier*, 45 F.3d at 731 .

Plaintiff testified that she was discharged because Defendant's decision-maker, William Polito, didn't like her for personal reasons. Specifically, she testified that William Polito did not like her because they lived in the same neighborhood and the neighbors spoke highly of her, that she had witnessed his wife intoxicated, and that he gave preference to other employees because they would go drinking with him. (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶¶ 29-31.) This is the

---

[5] Plaintiff states in her Response to Motion for Summary Judgment that "[t]he alleged spill that was impetus for the Plaintiff's discharge was disputed by the Plaintiff as to whether a hazardous substance was spilled. (Stmt ¶ 39.)" (Doc. # 26 at 8.) However, "Stmt ¶ 39" actually provides "Plaintiff admitted that other people could have thought the liquid on the floor was a hazardous chemical." (Joint Statement of Undisputed Material Facts, Doc. # 23 at ¶ 39.) This citation does not demonstrate that Plaintiff disputed that the material was in fact hazardous. Further, she does not argue that her termination is unjustified because she believed that the material was nonhazardous. In actuality, she admits that the investigation found that her failure to follow procedure exacerbated the situation, and that eighteen individuals were medically treated in connection with the spill and the emergency room was shut down. (*Id.* at ¶¶ 46, 47 and 54.) Therefore, she has not produced any evidence to create a material issue of fact regarding the chemical spill incident.

only evidence offered by Plaintiff to rebut Defendant's articulated reason for her termination. This testimony fails to support an inference of pretext.

First, none of the reasons why Defendant allegedly disfavored Plaintiff had anything to do with her age, and thus these reasons are not evidence of age discrimination. "When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision." *See Reeves*, 530 U.S. 141. Plaintiff's testimony does not demonstrate that age was a factor in Defendant's decision to terminate her. Second, her testimony does not demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" as required to demonstrate pretext. *See Olson,* 101 F.3d at 951-952. There is no question that Plaintiff was involved in the chemical spill incident and that she was disciplined as a result of the incident. Plaintiff has failed to meet her burden to demonstrate pretext.

Finally, Plaintiff argues that her termination "for the minor infraction of the call-off policy by a long term employee defies logic and Plaintiff submits that it is not the real reason for termination but was because of her age." (Plaintiff's Response to Motion for Summary Judgment, Doc. # 26 at 9.) This

argument ignores the uncontested facts, the undisputed serious nature of the chemical spill incident, and is without any legal support. Plaintiff has failed to support an inference of pretext, and therefore it is recommended that Defendant's Motion for Summary Judgement be granted as to Count I.

## III.   **CONCLUSION**

For the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

                                   /s/ Ila Jeanne Sensenich
                                  ILA JEANNE SENSENICH
                                  U.S. Magistrate Judge

Dated: June 30, 2006

cc:  The Honorable Terrence F. McVerry
     United States District Judge

     All parties electronically